JS 44
(Rev. 11/99)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFF**

Despina Kaddouri

*ORIGINAL*

**DEFENDANTS**

Merrill Lynch, Pierce, Fenner & Smith, Inc.

Thomas James McBride

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    State of
North Carolina

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Janette Johnson, Esq.
Janette Johnson & Assoc.
2601 Welborn Street
Dallas, Texas 75219

RECEIVED
JUL - 6 2004
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**ATTORNEYS (IF KNOWN)**

Charles A. Gall

Jenkens & Gilchrist, PC

1445 Ross Ave., Suite 3200

Dallas, Texas  75202

(214) 855-4500

**304CV1456-R**

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

3 Federal Question (U.S. Government Not a Party)

XX 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PFT | | DEF |
|---|---|---|---|
| Citizen of This State | ☐ 1 | Merrill Lynch, Pierce, Fenner & Smith | |
| | | Incorporated *or* Principal Place of Business In This State | ☐ 1 |
| Citizen of Another State | X 2 | | |
| | | Incorporated *and* Principal Place of Business In Another State | X 2 |
| Citizen or Subject of a Foreign Country | ☐ 3 | | |
| | | Foreign Nation | ☐ 3 |
| | | Thomas James McBride | |
| | | Citizen of This State | X 4 |
| | | Citizen of Another State | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 6 |

**IV. NATURE OF SUIT** *(PLACE AN "X" IN ONE BOX ONLY)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | FEDERAL TAX SUITS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 871 IRS - Third Party 26 USC 7609 |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | XX 370 Other Fraud | ☐ 690 Other | | ☐ 460 Deportation |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 810 Selective Service |
| | **CIVIL RIGHTS** | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | ☐ 441 Voting | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 210 Land Condemnation | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 892 Economic Stabilization Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | | ☐ 894 Energy Allocation Act |
| ☐ 245 Tort Product Liability | | Habeas Corpus | | | ☐ 895 Freedom of Information Act |
| ☐ 290 All Other Real Property | | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |

**V. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district    ☐ 6 Multidistrict Litigation

DALLAS3 958840v1 49351-00108

I.    CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
                          DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This Court has original jurisdiction over this cause under 28 U.S.C. Section 1332, diversity.  This lawsuit is based on claims of fraud, negligence and intentional infliction of emotional distress.

VII.    REQUESTED IN
        COMPLAINT:

☐ CHECK IF THIS IS A CLASS
  ACTION UNDER F.R.C.P. 23

DEMAND Not stated

CHECK YES only if demanded
in complaint:

X  JURY DEMAND:  Yes in state court action

VIII.    RELATED CASE(S) (See instructions):
         IF ANY                          JUDGE_____    DOCKET NUMBER

DATE:  July  6 , 2004

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE

JS 44 Reverse
(Rev. 11/99)



**United States District Court**
**Northern District of Texas**

**Supplemental Civil Cover Sheet for Cases Removed**
**From State Court**

RECEIVED
JUL - 6 2004
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

3 0 4 C V 1 4 5 6 - R

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the**
**U.S. District Clerk's Office.  Additional Sheets may be necessary.**

1.  **State Court Information:**
    Please identify the court from which the case is being removed and specify the number assigned to the case in the court.

    | Court | Case Number |
    |-------|-------------|
    | 95th Judicial District Court/Dallas County, Texas | 04-04909 |

2.  **Style of Case:**
    Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaim(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type.  Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

    **Style:**  *Despina Kaddouri v. Merrill Lynch, Pierce Fenner & Smith, and Thomas James McBride*

    | Party and Party Type | Attorney(s) |
    |----------------------|-------------|
    | Plaintiff – Despina Kaddouri | Janette Johnson, Esq.<br>State Bar No. 10744020<br>Christine Neill Huffman, Esq.<br>State Bar No. 00796793<br>Janette Johnson & Assoc.<br>2601 Welborn Street<br>Dallas, Texas 75219<br>(214) 522-4090<br>(214) 522-4092 (fax) |
    | Defendant – Merrill Lynch, Pierce Fenner & Smith, Inc. and Thomas James McBride | Charles A. Gall<br>State Bar No. 07281500<br>Jenkens & Gilchrist, PC<br>1445 Ross Ave., Suite 3200<br>Dallas, Texas 75202<br>(214) 855-4500<br>(214) 855-4300 (fax) |

Page 1



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DESPINA KADDOURI | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| MERRILL LYNCH, PIERCE, | ) | **304CV1456-R** |
| FENNER & SMITH, and | ) | |
| THOMAS JAMES MCBRIDE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendants Merrill Lynch, Pierce, Fenner & Smith

Inc. ("Merrill Lynch") and Thomas McBride ("McBride") file this Notice of Removal to

remove this civil action from the 95th Judicial District Court of Dallas County, Texas,

wherein it was filed as Civil Action Number 04-04909, to the United States District Court

Northern District of Texas, Dallas Division, and show unto this Honorable Court as

follows:

1.       On or about May 28, 2004, Plaintiff Despina Kaddouri filed a Complaint

in the 95th Judicial District Court of Dallas County, Texas, in the civil action styled

*Despina Kaddouri v. Merrill Lynch, Pierce, Fenner, & Smith and Thomas James

McBride*, Civil Action No. 04-04909.  A true and correct copy of all process, pleadings,

and orders served upon Merrill Lynch is attached hereto as Exhibit "A".

2.       The summons and complaint were served upon Merrill Lynch and the

other named defendant, Thomas McBride, on June 9, 2004.

3.      This action could have been filed in this Court pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.    In addition, the citizenship of Defendant McBride should be disregarded for purposes of 28 U.S.C. § 1441(b) because he has clearly been fraudulently joined in this action.

**DIVERSITY OF CITIZENSHIP**

4.      Upon information and belief, Plaintiff Despina Kaddouri is a citizen and resident of the State of North Carolina.  (See Complaint, ¶ 2)

5.      Defendant Merrill Lynch is a Delaware Corporation with its principal place of business in New York, New York. (See Complaint, ¶ 3).  Pursuant to 28 U.S.C. § 1332(c)(1), Merrill Lynch is a citizen of both the State of Delaware and the State of New York.  As a result, Merrill Lynch is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Texas within the meaning of the Acts of Congress relating to the removal of cases.

6.      Although Defendant Thomas McBride is a citizen and resident of the State of Texas, his joinder does not preclude removal because he has been fraudulently joined in this action.

7.      Diversity of citizenship is present because there is complete diversity of citizenship between the Plaintiff and all Defendants.  As reflected in Plaintiff's Complaint, Plaintiff (who resides in North Carolina) is not a citizen of the same state as either Defendant Merrill Lynch (New York) or Tommy McBride (Texas).   Furthermore, because McBride was fraudulently joined in this action, his citizenship is disregarded for

DALLAS3 958801v1 49351-00108

purposes of 28 U.S.C. § 1441(b).  28 U.S.C. § 1441(b) states that an action between diverse parties is "removable only if none of the parties in interest **properly joined** and served as defendants is a citizen of the State in which such action is brought." (emphasis added).  "[I]f a defendant has been fraudulently joined . . . the citizenship of that party is disregarded for purposes of determining diversity and applying § 1441(b)." *Skinner v. Cooper Tire & Rubber Co.*, 2004 U.S. Dist. LEXIS 9505 (N.D.Tex, May 26, 2004*); See also Great Plains Trust Co.  v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) (The fact that the individual defendant was a Texas citizen did not prevent removal under the terms of 28 U.S.C. § 1441(b) since Lumpkins was fraudulently joined as a defendant."); *Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995) (When a defendant has been fraudulently joined, the citizenship of that defendant must be disregarded when determining if a court has diversity jurisdiction.); *Marabella v. Automation U.S.A. Corp.*, 88 F.Supp.2d 750 (S.D. Tex. 2000) (same).

8.     "Fraudulent joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiffs were unable to establish a cause of action against the non-diverse defendant in state court." *Skinner v. Cooper Tire & Rubber Co.,* 2004 U.S. Dist. LEXIS 9505 (May 26, 2004) citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)(citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1998).   In applying the latter test, the "cases have [ ] noted the similarity of the test for fraudulent joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim."  *Travis*, 326 F.3d at 648.  In fact, the fraudulent joinder test "appears adopted from the Rule 12(b)(6) standard under which 'the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *Id.*    In

determining whether a defendant has been fraudulently joined, the possibility of recovery against defendant must be reasonable, not merely theoretical. *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5ᵗʰ Cir. 2003); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305 (5ᵗʰ Cir. 2002). Stated differently, the court must determine whether there is any *reasonable* basis upon which the plaintiff might be able to establish the non-diverse defendant's liability on the pleaded claims in state court. *Travis,* 326 F.3d at 647.

9.    In this case, the joinder of McBride is fraudulent because none of the claims asserted against him in Plaintiff's Complaint state a claim for which he can be liable. The crux of Plaintiff's Complaint is that Merrill Lynch (her former employer) should have prevented Susan Ruebman, another female co-worker, from being mean or hostile towards her. In a blatant attempt to prevent removal, Plaintiff asserted two claims against Tommy McBride ("McBride"), a Financial Advisor with Merrill Lynch under which both Plaintiff and Ruebman worked. The two claims that Plaintiff asserted against McBride are fraud and intentional infliction of emotional distress. See Complaint ¶¶ 53-64. As outlined herein, neither claim is viable against McBride under the law or the facts alleged.

10.    Plaintiff's fraud claim against McBride is based on allegations that he "engaged in a course of fraudulent conduct including making material misrepresentations to [her] and omitting material facts to [her], to get her to accept the position in their work group." (Complaint, ¶ 24).[1] The facts she accuses McBride of omitting is information about Ruebman's alleged "abusive" conduct. (Complaint, ¶ 57). Plaintiff fails to state a cognizable claim of fraud against Defendant McBride. Under Texas law, a fraud cause of

---

[1] Plaintiff was already working for Merrill Lynch at the time. Plaintiff's claim is that McBride fraudulently induced her to work with his group of Financial Advisors without disclosing to her Ruebman's alleged propensity for hostility. See Complaint.

action requires: (1) a material misrepresentation of fact, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *Georgen-SAAD v. Texas Mutual Insurance Co.*, 195 F. Supp.2d 853, 860 (W.D. Tex. 2002)(citations omitted). A plaintiff has to present evidence that the defendant made material representations with the intent to deceive and with no intention of performing as represented. *Id.; see also Great Plains Trust,* 313 F.3d at 323. Plaintiff must also prove each element of fraud for each alleged misrepresentation. *Stephanz v. Copeland*, 846 S.W.2d 895, 903 (Tex. App.—Houston 1993)(citations omitted). Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly shown. *Id.* A Plaintiff must show that each representation complained of concerned a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation. *Georgen-SAAD*, 195 F.Supp.2d at 861.

11.    Plaintiff has not asserted a viable fraud claim against McBride because under controlling Texas law, the alleged representations upon which she bases this claim are clearly statements of opinion, judgment, probability, or expectation. *Georgen-SAAD*, 195 F.Supp.2d at 861. The alleged representations upon which Plaintiff bases her fraud claim against McBride are outlined in Paragraph 56 of her Complaint and consist of the following remarks:

- she would be trained by Ruebman. (Complaint, ¶ 56(A)).

*This statement is clearly a statement of probability or expectation. Regardless, the statement was true. Plaintiff was, in fact, trained by Ruebman.*

- "the position of Client Associate would last for a two year period, and that at that time she could continue in the

position or <u>possibly</u> become a Junior Broker on the team."
(Complaint, ¶ 56(B))(emphasis supplied).

*Again, this is a statement of probability or expectation and not a material fact.*
Grafton v. Sears Termite & Pest Control, Inc. 2000 U.S. Dist. LEXIS 4966, *25
(N.D. Tex. 2000)(statements made to Plaintiff during job interview regarding the
progression of training program "with the ultimate goal of reaching Zone manager," a
position that could pay up to $1000,000 a year, were not misrepresentations, but mere
statements of puffery). Of course, Plaintiff resigned before the expiration of two years
(Complaint ¶¶35-57) so there is no reason to believe this was not McBride's <u>true</u>
expectation at that time.

- "because of the tremendous success of the Crockett McBride
  team and the amount of learning and training available this
  would be a good career move." (Complaint, ¶ 56(C)).

*This statement is nothing more than the expression of an honest opinion and
therefore not actionable. Marsland v. Family Heritage Life Insurance Co.,* 2001 Tex.
App. LEXIS 820 (Tex App.-Dallas 2001)(fraud claim fails because statement to
employee insurance sales representative that he could expect sales commissions of
more than $50,000 his first year were not statements of material facts but merely an
opinion or prediction as to what he could expect to make his first year). Regardless,
there is no basis to conclude McBride did not honestly hold that opinion.

- "after serving time as a Client Associate, she would become
  a Junior Broker and that she would automatically get
  referrals from clients with significant portfolios, which
  would be a steady source of income to her as a broker."
  (Complaint, ¶ 56(D)).

*Again, this is merely a statement of probability or expectation and does not
concern a material fact. See e.g., Day v. Fedex Ground Package System, Inc.,* 2003
U.S. Dist. LEXIS 8355 (N.D. Tex.-Ft. Worth. 2003)(statements made to plaintiff that
he could expect to make a certain amount of money per annum were statements of
future predictions and opinions that cannot form a basis for fraud as a matter of law);
*Zar v. Omni Industries, Inc.,* 813 F.2d 689 (5th Cir. 1987)("The generally accepted
rule in Texas jurisprudence is that future predictions and opinions, especially those
regarding the future probability of a business, cannot form a basis for fraud as a
matter of law.")   Further, Plaintiff resigned before the expiration of two years
(Complaint ¶¶ 35-37) so there is no reason to believe this would not have occurred.

- "she would gain invaluable experience, including contacts,
  networking opportunities, and sales opportunities, which
  she could utilize when she returned to a Broker position,
  whether or not the Broker position was with their group."
  (Complaint, ¶ 56(E)).

*Yet again, Plaintiff cannot show that this representation is a material fact as distinguished from a mere matter of opinion, judgment, probability or expectation.* See supra Grafton, 2000 U.S. Dist. LEXIS 4966, Marsland, 2001 Tex. App. LEXIS 820; Zar, 813 F.2d 689. Moreover, Plaintiff resigned before returning to an FA role – thus, there is no basis to even determine whether this would have occurred or not.

- "the contacts and opportunities would be financially lucrative when she returned to a Broker position whether or not the Broker position was with their group." (Complaint, ¶ 56(F)).

*Likewise, this statement is not more than a future prediction and opinion. See supra, Day,* 2003 U.S. Dist. LEXIS 8355; *See Zar,* 813 F.2d 689. Further, Plaintiff resigned before returning to the FA position.

12.    Plaintiff also maintains that McBride committed fraud by <u>failing to disclose</u> information relating to the alleged disruptive conduct of Ruebman. (Complaint, ¶ 57). For there to be an actionable nondisclosure fraud claim, there must be a duty to disclose. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473 (5th Cir. 2000); *Wilson v. SYSCO Food Services of Dallas, Inc.*, 940 F.Supp. 1003 (N.D. Tex. 1996)(plaintiff's fraud claim based on defendant's failure to disclose that it "would not provide the Plaintiff with an opportunity to be evaluated on a non-discriminatory basis for transfer, promotion, or continued employment" fails because there is no evidence that a special relationship of trust or confidence existed between plaintiff and employer to create a duty to disclose); *Becker v. Nat'l Educ. Training Group*, 2002 U.S. Dist. Lexis 19063 (N.D. Tex. 2002)(Texas law does not recognize duty to disclose in employer-employee context). In Texas, there is no special relationship in the employment context that would create an obligation for McBride to disclose to Plaintiff information about her co-

7

workers.[2]  Moreover, any statement made by McBride about Ruebman would merely be a matter of opinion and not actionable fraud.  Certainly, McBride's alleged *failure* to give a derogatory opinion about an employee on his team cannot serve as the basis for a viable fraud claim.  Furthermore, McBride could not predict how Ruebman would get along with Plaintiff, nor would it have been appropriate (much less lawful) for him to defame Ruebman to Plaintiff.  Accordingly, there is no reasonable possibility of recovery for fraud against Defendant McBride. *See Great Plains Trust Co v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002)("We conclude that the district court did not err in holding that Lumpkins had been fraudulently joined in plaintiffs' fraud claim.")

13.    Plaintiff also brings a claim for intentional infliction of emotional distress against McBride.  This claim is based on Plaintiff's allegations that McBride failed to notify and warn her about Ruebman's alleged "abusive" conduct, failed to adequately supervise and train Ruebman, and failed to conduct an investigation concerning Ruebman's alleged abusive and tortious conduct. (Complaint, ¶¶ 29, 37).  Plaintiff's complaints about Ruebman's conduct are based on Ruebman's alleged "hysterical crying jags, lying, attempts to destroy the careers of her co-workers, untruthful behavior, intolerable absenteeism, inappropriate emotional outbursts, frequent yelling at co-workers or giving them the 'silent treatment', in appropriate threats, interference with employees while at home and malicious interference with the careers of her co-workers." (Complaint, ¶ 29).

14.    In order to establish a claim for intentional infliction of emotional distress ("IIED") against McBride under Texas law,  Plaintiff must show that (1) McBride acted

---

[2] It is noteworthy that McBride was not even a manager of Merrill Lynch but simply a Financial Advisor. Of course, even a manager would not have a duty to disclose to Plaintiff (much less a duty to disclose that a co-worker was difficult to work with, assuming that were even true).

intentionally or recklessly; (2) his conduct was extreme and outrageous; (3) his actions caused Plaintiff emotional distress; and (4) Plaintiff's resulting emotional distress was severe. *Southwestern Bell Mobile Sys. v. Franco*, 971 S.W.2d 52, 53 (Tex. 1998); *See also Stults v. Conoco*, 76 F.3d 651, 658 (5th Cir. 1996). "Extreme and outrageous conduct is that which is "so extreme in degree, or so outrageous in character, as to go beyond all bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community." *Chavez v. McDonald's Corp.*, 1999 U.S. Dist. LEXIS 15978 (N.D. Tex. 1999) *citing Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). "Insults, indignities, threats, annoyances, or petty oppression, without more, do not rise to the level of intentional infliction of emotional distress." *Jackson v. Cheddar's Inc.*, 2003 U.S. Dist. LEXIS 20834, *39 (N.D. Tex. 2003).

15.    As a result of this stringent standard, Texas courts have rarely recognized an intentional infliction of emotional distress claim in the context of employment disputes. "The essential ingredient of extreme and outrageous conduct required for such a claim has been narrowly construed in the employment context." *Pilarcik v. Silicon Sys., Inc.*, 1993 U.S. Dist. LEXIS 21275 (N.D. Tex. 1993). "Establishing 'extreme and outrageous' conduct in the employment context is very difficult." *Best v. GT Directories Serv. Corp.*, 1993 U.S. Dist. LEXIS 21276 (N.D. Tex. 1993). "In the employment context, a claim for intentional infliction of emotional distress will not be supported by the broad range of conduct labeled as 'mere employment disputes.'"(internal citations omitted) *MacArthur v. Univ. of Tex. Hlth. Ctr.*, 45 F.3d 890, 899 (5th Cir. 1995). In fact, "[o]nly in the most unusual of employment cases does the conduct move out of the realm of any ordinary employment dispute and into the classification of extreme and outrageous

conduct." *Hughes v. Cook*, 148 F.Supp.2d 737, 745 (N.D. Tex. 2000)(citation omitted) (emphasis added). As a result, the Fifth Circuit has held that even deplorable conduct by an employer that violates Title VII does not constitute "extreme and outrageous" conduct "except in the most unusual cases." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996)(per curiam) *citing Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 659, 654 (5th Cir. 1994).

      16.    Needless to say, under Texas law McBride's alleged failure to remedy the conflict that developed between these two female co-workers does not even approach the level of conduct necessary to state a viable claim of outrage. *See e.g., Burden v. General Dynamic Corp.*, 60 F.3d 213 (5th Cir. 1995)(actions that might be deemed insensitive, including the demotion of plaintiff in violation of company policy, did not come close to the level of outrageousness needed to succeed on a Texas claim of intentional infliction of emotional distress); *Humphreys v. Medical Towers, Ltd.*, 893 F.Supp. 672, 681 (S.D. Tex. 1995), *aff'd*, 100 F.3d 952 (5th Cir. 1996)(behavior held not to be extreme and outrageous where defendant encouraged employees to act with insubordination toward plaintiff, defendant called plaintiff profane name, defendant told plaintiff she was incompetent and should quit, and defendant treated her with blatant hostility during meetings); *Cook v. Fidelity Investments*, 908 F.Supp. 438, 440 (N.D. Tex. 1995)(defendant's motion to dismiss granted on intentional infliction of emotional distress claim; court held employer's actions in subjecting plaintiff to embarrassing and humiliating yelling scenes in the presence of co-workers, including the use of racial epithets, and in allegedly giving plaintiff poor performance reviews and demoting

plaintiff because of his race did not constitute "outrageous" conduct).[3]

17.    Nowhere in Plaintiff's complaint does she allege facts sufficient enough to support a claim for intentional infliction of emotional distress.  The alleged conduct <u>by Ruebman</u> does not even reach this threshold.  Certainly, McBride's alleged failure to <u>remedy</u> Ruebman's trivial conduct cannot qualify under this standard.  Moreover, Texas Courts have routinely held that "such a claim can be dismissed on a Rule 12(b)(6) motion." *Chavez v. McDonald's Corp.*, 1999 U.S. Dist. LEXIS 15978 (N.D. Tex. 1999) Accordingly,  Plaintiff has no possibility of recovery against McBride on this claim and he is therefore fraudulently joined.

18.    Plaintiff's fraud and intentional infliction of emotional distress claims fail to state cognizable causes of action against McBride.  Plaintiff therefore fraudulently joined McBride.  This fraudulent joinder should neither defeat Merrill Lynch's removal rights nor circumvent this Court's jurisdiction. *See Chavez v. McDonald's Corp.*, 1999 U.S. Dist. LEXIS 15978 (N.D. Tex. 1999) (plaintiff's claims against the individual supervisor for intentional infliction of emotional distress were not actionable because they fell far short of the standard for extreme and outrageous and therefore, the individual supervisor was fraudulently joined and "his citizenship can be disregarded for purposes

---

[3] *See also Garcia v. Andrews*, 867 S.W.2d 409, 410-412 (Tex. App.—Corpus Christi 1993, no writ)(manager's alleged sexual harassment of plaintiff, including observing plaintiff in a manner that made her feel as if she was being undressed, asking plaintiff if she "did her best work in the dark," and discussing sizes and shapes of men and conduct "in the sack" held insufficient to constitute "outrageous" conduct); *Webster v. Bass Enterprises Prod. Co.*, 192 F.Supp.2d 684 (N.D. Tex. 2002)(male supervisor's conduct toward plaintiff, including throwing objects at her, raising his eyebrows and sticking his tongue out in a sexually suggestive manner, asking her if she wanted to get drunk, yelling at her in front of her co-workers, telling her that all single women were fair game, denying her raises, and pushing her and her chair into the desk while he revised her computer screen from behind was not so vile and reprehensible as to be intolerable in a civilized society as required for employee's claim of intentional infliction of emotional distress).

11

of removal"); *Great Plains Trust Co v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002)("We conclude that the district court did not err in holding that Lumpkins had been fraudulently joined in plaintiff's fraud action . . .[t]he district court did not err in holding that plaintiffs had no possibility of recovering against Lumpkins for fraud.")

## AMOUNT IN CONTROVERSY

19.     Under 28 U.S.C. § 1332(a), district courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of costs and interest.  Plaintiff's complaint seeks an unspecified amount of damages.  Where the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $ 75,000.  *Decker v. Fujicolor Processing, Inc.*, 1998 U.S. Dist. LEXIS 4792, * 2 (N.D. Tex. 1998)(citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir.), *cert. Denied,* 516 U.S. 865, 133 L.Ed.2d 119, 116 S.Ct. 180 (1995)).  Plaintiff alleges that she suffered physical and emotional injuries as a result of the tortious conduct of Defendants Merrill Lynch and McBride.  (Complaint, ¶ 33).  She seeks every conceivable form of damages including economic damages and economic expectation damages, compensatory damages for physical pain, mental anguish, humiliation, loss of privacy and emotional distress, punitive damages and attorney fees.  (Complaint, ¶¶ 65-69). Plaintiff's extensive list of damages makes it facially apparent from the Complaint that she seeks damages in excess of $75,000.   *White v. FCI USA, Inc.* 319 F.3d 672, 675 (5th Cir. 2003)(jurisdictional amount is satisfied if it is "facially apparent" from the complaint that damages sought exceed $75,000).   Accordingly, the jurisdictional amount required for diversity jurisdiction is clearly met in this case.

12

**THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

20. Because this Notice of Removal has been filed within thirty days of service of the Complaint upon the first served Defendant, it is timely under 28U.S.C. § 1446(b).

21. All properly joined and served Defendants join in and consent to this removal. Fraudulently joined parties need not join in a Notice of Removal. *Jernigan v. Ashland Oil*, 989 F.2d 812 (5th Cir. 1993). Thomas McBride has nevertheless consented to and joined in this Notice of Removal.

22. Defendants have sought no similar relief with respect to this matter.

23. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

24. Written notice of the filing of this Notice of Removal will be given to the adverse party as required by law.

25. A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will promptly be filed with the 95th Judicial District Court Clerk for the District Court of Dallas, County.

26. The allegations of this notice are true and correct and this cause of action is within the Jurisdiction of the United States for the Northern District of Texas, and this case is removable to the United States District Court for the Northern District of Texas.

27. If any questions arises as to the propriety of the removal of this action, Merrill Lynch requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, Merrill Lynch, desiring to remove this case to the United States District Court for the Northern District of Texas, Dallas Division, being the district and

13

division of said Court for the County in which said action is pending, prays that the filing

of this Notice of Removal shall effect the removal of said suit to this Court.

Respectfully submitted,

JENKENS & GILCHRIST,
*a Professional Corporation*

By:

Charles A. Gall
State Bar No. 07281500
1445 Ross Avenue
Suite 3200
Dallas, Texas 75202
Telephone:    (214) 855-4338
Telecopier:    (214) 855-4300

ATTORNEY FOR MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED AND THOMAS
JAMES MCBRIDE

14

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | FILE DATE | CASE NO. |
|---|---|---|---|
| KADDOURI DESPINA | JOHNSON J | 5/28/04 | 04-04909-D |
| | 10744020 | | |

| DEFENDANT NAME | DEFENDANT ATTORNEY | TYPE OF CASE |
|---|---|---|
| MERRILL LYNCH PIERCE FEN | | DAMAGES |

| DISPOSITION | COST AGAINST | DATE | REFERENCE | JUDGEMENT AMT |
|---|---|---|---|---|
| | TRUST FUND BALANCE | STATUS | | |
| | | ACTIVE | | |

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | FILE DATE | CASE NO. |
|---|---|---|---|
| KADDOURI DESPINA | JOHNSON J | 5/28/04 | 04-04909-D |

| TRANS DT | TRANS DESCRIPTION | REFRNCE | P/D | CD | NON-FEE | DEPOSITS | CHARGES |
|---|---|---|---|---|---|---|---|
| 5/28/04 | JANETTE JOHNSON | 36285 | P | 10 | | 226.00 | |
| 5/28/04 | STATE INDIGENCE | | P | 12 | | | 10.00 |
| 5/28/04 | DC RECORDS MGT FEE | | P | 17 | | | 5.00 |
| 5/28/04 | CONTINGENCY FUND | | P | 24 | | | 5.00 |
| 5/28/04 | SECURITY FEE | | P | 26 | | | 5.00 |
| 5/28/04 | RECORD MGT FEE | | P | 27 | | | 5.00 |
| 5/28/04 | ENT JURY DEMAND | J20/259 | P | 31 | | | |
| 5/28/04 | CLERKS FEE | | P | 31 | | | 50.00 |
| 5/28/04 | COURT RPT SVC FEE | | P | 33 | | | 15.00 |
| 5/28/04 | JURY DEMAND | | P | 34 | | | 30.00 |
| 5/28/04 | LAW LIBRARY FUND | | P | 36 | | | 15.00 |
| 5/28/04 | APPELLATE FUND | | P | 52 | | | 5.00 |
| 5/28/04 | STATE JUDICIAL FEE | | P | 53 | | | 40.00 |
| 5/28/04 | MEDIATION FUND | | P | 55 | | | 10.00 |
| 5/28/04 | FACILITY FEE | | P | 60 | | | 15.00 |
| 6/01/04 | CIT & COP  ATTY | | P | 31 | | | 8.00 |
| 6/01/04 | CIT & COP  ATTY | | P | 31 | | | 8.00 |
| 6/09/04 | RET CIT PPS | | P | 51 | | | |
| 6/09/04 | RET CIT PPS | | P | 51 | | | |
| 6/09/04 | RET CIT PAID | | P | 59 | | | |

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | FILE DATE | CASE NO. |
|---|---|---|---|
| KADDOURI DESPINA | JOHNSON J | 5/28/04 | 04-04909-D |

| TRANS DT | TRANS DESCRIPTION | REFRNCE | P/D | CD | NON-FEE | DEPOSITS | CHARGES |
|---|---|---|---|---|---|---|---|
| 6/09/04 | RET CIT PAID | | P | 59 | | | |

***** CASE TOTALS *****

TOTAL GROSS CASE COSTS          226.00    NON-FEE ACCTS.              .00

                                          COUNTY DEPOSITS         226.00

                                          COUNTY CHARGES          226.00

                CASE BALANCE                   .00

¢CT10 3

## CITATION

No. ___04-04909-D___

DESPINA KADDOURI

vs.

MERRILL LYNCH PIERCE FEN

**ISSUED**

This ___15___ day of ___JUNE___ 20 ___04___

JIM HAMLIN
Clerk, District Courts,
Dallas County, Texas

By ___SHELIA BRADLEY___ Deputy

Atty for ___PLAINTIFF___

JANETTE JOHNSON
2601 WELBORN STREET
DALLAS,TX 75219

214/522-4090

DALLAS COUNTY CONSTABLE

FEES PAID

FEES NOT PAID

---

## FORM NO. 353-3 — CITATION
## THE STATE OF TEXAS

TO

MERRILL LYNCH, PIERCE, FENNER & SMITH
SERVE REGISTERED AGENT CT CORP SYSTEM
350 N. ST. PAUL ST.
DALLAS,TX 75201

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the ___95TH___ Judicial District Court at the George L. Allen, Sr. Courts Building, 600 Commerce Street, Dallas, Texas 75202-4606. Said Plaintiff being

DESPINA KADDOURI

Filed in said Court on the ___28TH___ day of ___MAY___ 20 ___04___ against

MERRILL LYNCH PIERCE FEN , MCBRIDE THOMAS JAMES

For suit, said suit being numbered ___04-04909-D___ , the nature of which demand is as follows:   SUIT ON DAMAGES, ETC.♦♦

as shown on said petition, a copy of which accompanies this citation.
If this citation is not served, it shall be returned unexecuted.

WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas
Given under my name and the Seal of said Court at office this the ___ day of ___JUNE___ 20 ___04___

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas County, Texas

By ___SHELIA BRADLEY___                    Deputy

LINDA SIKES
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
OCTOBER 28, 2005

|   |   |
|---|---|
| | § |
| *In re* Application to Serve Civil Process | § |
| pursuant to Tex. R. Civ. P. 103 of **JAYMIE** | § |
| **CASTER** | § |
| | § |
| | § |
| | § |

In the
Civil District Courts – 14th, 44th, 68th, 95th, 101st, 116th,
134th, 160th, 162nd, 191st, 192nd, 193rd & 298th
Family District Courts – 254th, 255th, 256th, 301st, 302nd,
303rd & 330th
Juvenile District Courts – 304th & 305th
County Courts at Law Nº 1, 2, 3, 4 & 5
of Dallas County, Texas

### Order Authorizing JAYMIE CASTER to Serve Private Process

ON THIS DATE, the court finds that **JAYMIE CASTER** is an individual who is authorized to serve citations and other notices pursuant to Tex. R. Civ. P. 103.

IT IS THEREFORE ORDERED that **JAYMIE CASTER** is authorized by the Civil District Courts 14th, 44th, 68th, 95th, 101st, 116th, 134th, 160th, 162nd, 191st, 192nd, 193rd & 298th, the Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd & 330th, the Juvenile District Courts 304th & 305th, Civil County Courts at Law Nos. 1, 2, 3, 4 & 5 to serve citations, notices, subpoenas, and all writs which do not involve taking into possession any person, property or thing.

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to serve Writs of Attachment, Execution, Habeas Corpus, Injunction, or Sequestration; (except that for the Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd and 330th an authorized process server may serve temporary orders, Writs of Attachments and Habeas Corpus writs).

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to be a peace officer or to carry firearms in the performance of serving citations, notices, orders, subpoenas or writs.

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to serve process –

1. If **JAYMIE CASTER** is or becomes delinquent in paying child support until such delinquency is rectified by full payment of all amounts owed;

2. By using an employee, agent or subcontractor to actually deliver the process;

3. In any case in which **JAYMIE CASTER**, or **JAYMIE CASTER**'s spouse or relative, or **JAYMIE CASTER**'s employer or employee, is a party or has an interest or may be called as a witness;

4. In any case in which **JAYMIE CASTER**, or **JAYMIE CASTER**'s spouse or relative, or any member or employee of **JAYMIE CASTER**'s law firm, appears as counsel;

5. In any case in which **JAYMIE CASTER** is disqualified in law to serve process.

A COPY OF THIS ORDER must be attached to every document served and every return of service.

EXCEPT IN SPECIFIC CASES where a court has entered a Rule 106 order, all process must be served *only* by **JAYMIE CASTER** handing it to the person named therein. It may not be handed to any other person, even if the named person is present.

| THIS ORDER EXPIRES ON THE BELOW SIGNED DATE IN THE YEAR **2006**. |
|---|

Signed this ___5___ day of ___May___, 2004.

_Joseph M. Cox_

Joe Cox, 160th Judicial Court, sitting for the Civil District Courts 14th, 44th, 68th, 95th, 101st, 116th, 134th, 160th, 162nd, 191st, 192nd, 193rd & 298th, Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd & 330th Juvenile District Courts 304th & 305th, Civil County Courts at Law Nos. 1, 2, 3, 4 & 5

(rev'd 2/24/2003)

0111

# CITATION

No. _04-04909-D_

DESPINA KADDOURI

vs.

MERRILL LYNCH PIERCE FEN

**ISSUED**

This _18th_ day of _JUNE_ 20 _04_

**JIM HAMLIN**
**Clerk, District Courts,**
**Dallas County, Texas**

By _____ SHELIA BRADLEY _____ Deputy

Atty for _____ PLAINTIFF

JANELLE JOHNSON
2601 WELBORN STREET
DALLAS,TX 75219

214/522-4070

**DALLAS COUNTY CONSTABLE**

FEES
PAID

FEES NOT
PAID

---

## FORM NO. 353-3 — CITATION

# THE STATE OF TEXAS

TO      THOMAS JAMES MCBRIDE
        5910 N. CENTRAL EXPWY, STE 200
        DALLAS,TX /5026

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the __95TH__ Judicial District Court at the George L. Allen, Sr. Courts Building, 600 Commerce Street, Dallas, Texas 75202-4606. Said Plaintiff being

        DESPINA KADDOURI

Filed in said Court on the _28TH_ day of _MAY_ 20 _04_ against

        MERRILL LYNCH PIERCE FEN , MCBRIDE THOMAS JAMES

For suit, said suit being numbered ____04-04909-D____ , the nature of which demand is as follows:      SUIT ON DAMAGES, ETC...

as shown on said petition, a copy of which accompanies this citation.
If this citation is not served, it shall be returned unexecuted.

LINDA SIKES
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXP
OCTOBER 28, 2005

WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office this the _____ day of
_____ JUNE _____ 20 _04_

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas County, Texas

By _____ SHELIA BRADLEY _____ Deputy

|   |   |
|---|---|
| *In re* Application to Serve Civil Process pursuant to Tex. R. Civ. P. 103 of **JAYMIE CASTER** | § § § § § § § |

In the
Civil District Courts – 14th, 44th, 68th, 95th, 101st, 116th, 134th, 160th, 162nd, 191st, 192nd & 298th
Family District Courts – 254th, 255th, 256th, 301st, 302nd, 303rd & 330th
Juvenile District Courts – 304th & 305th
County Courts at Law Nº 1, 2, 3, 4 & 5
of Dallas County, Texas

### Order Authorizing JAYMIE CASTER to Serve Private Process

ON THIS DATE, the court finds that **JAYMIE CASTER** is an individual who is authorized to serve citations and other notices pursuant to Tex. R. Civ. P. 103.

IT IS THEREFORE ORDERED that **JAYMIE CASTER** is authorized by the Civil District Courts 14th, 44th, 68th, 95th, 101st, 116th, 134th, 160th, 162nd, 191st, 192nd, 193rd & 298th, the Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd & 330th, the Juvenile District Courts 304th & 305th, Civil County Courts at Law Nos. 1, 2, 3, 4 & 5 to serve citations, notices, subpoenas, and all writs which do not involve taking into possession any person, property or thing.

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to serve Writs of Attachment, Execution, Habeas Corpus, Injunction, or Sequestration; (except that for the Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd and 330th an authorized process server may serve temporary orders, Writs of Attachments and Habeas Corpus writs).

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to be a peace officer or to carry firearms in the performance of serving citations, orders, subpoenas or writs.

THIS ORDER DOES NOT AUTHORIZE **JAYMIE CASTER** to serve process –

1. If **JAYMIE CASTER** is or becomes delinquent in paying child support until such delinquency is rectified by full payment of all amounts owed;

2. By using an employee, agent or subcontractor to actually deliver the process;

3. In any case in which **JAYMIE CASTER**, or **JAYMIE CASTER**'s spouse or relative, or **JAYMIE CASTER**'s employer or employee, is a party or has an interest or may be called as a witness;

4. In any case in which **JAYMIE CASTER**, or **JAYMIE CASTER**'s spouse or relative, or any member or employee of **JAYMIE CASTER**'s law firm, appears as counsel;

5. In any case in which **JAYMIE CASTER** is disqualified in law to serve process.

A COPY OF THIS ORDER must be attached to every document served and every return of service.

EXCEPT IN SPECIFIC CASES where a court has entered a Rule 106 order, all process must be served *only* by **JAYMIE CASTER** handing it to the person named therein. It may not be handed to any other person, even if the named person is present.

| THIS ORDER EXPIRES ON THE BELOW SIGNED DATE IN THE YEAR **2006**. |
|---|

Signed this ____5th____ day of ____May____, 2004.

_____

Joe Cox, 160th Judicial District Court, sitting for the Civil District Courts 14th, 44th, 68th, 95th, 101st, 116th, 134th, 160th, 162nd, 191st, 192nd, 193rd & 298th, Family District Courts 254th, 255th, 256th, 301st, 302nd, 303rd & 330th Juvenile District Courts 304th & 305th, Civil County Courts at Law Nos. 1, 2, 3, 4 & 5

(rev'd 2/24/2003)

DALLAS COUNTY

DISTRICT CLERK
BILL LONG

FILED

2004 MAY 28  PH 5: 07

CAUSE NO. ___04-04909___

JIM HAMLIN
DISTRICT CLERK
BALLAS CO. TEXAS
_____DEPUTY

_Dergina Kaddouri_

PLAINTIFF

VS

_Merrel Lynch Pierce Fenner Smith_

DEFENDANT

_and_

_Thomas Jims McBride_

§
§
§
§
§
§
§
§
§
§
§

D-95th

IN THE DISTRICT COURT

_____JUDICIAL DISTRICT

DALLAS COUNTY, TEXAS

ENTER DEMAND FOR JURY

· JURY FEE PAID BY:

(PLAINTIFF)   /   DEFENDANT

$ FEE PAID:  $ 30.00

DATE PAID: _____

RECORDED IN VOLUME ___J20___   ·PAGE ___259___

NO. 04-04909

FILED

| | | |
|---|---|---|
| DESPINA KADDOURI, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | JIM HAMLIN |
| vs. | § | DISTRICT CLERK |
| | § | DALLAS CO. TEXAS |
| MERRILL LYNCH, PIERCE, FENNER | § | DEPUTY |
| & SMITH | § | D-95th JUDICIAL DISTRICT |
| | § | |
| and | § | |
| | § | |
| THOMAS JAMES MCBRIDE, | § | |
| | § | |
| *Defendants*. | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

Despina Kaddouri, formerly known as Despina Foster [Plaintiff or Kaddouri] complains

of Merrill Lynch, Pierce, Fenner & Smith  [Defendant Merrill Lynch], and Thomas James

McBride [Defendant McBride or McBride] as follows:

1.       Discovery in this action is intended to be conducted under Level 2 pursuant to TEX.

R. CIV. P. 190.

2.       Kaddouri is a citizen of the United States and the State of North Carolina.  She is a

former resident of Dallas County, Texas where she was employed by Merrill Lynch.

3.       Merrill Lynch is a Delaware corporation conducting business throughout the

United States including in Dallas County at 5910 N. Central Expressway, Suite 200, Dallas,

Texas 75026.   Merrill Lynch may be served by service on its registered agent in Texas:

CT Corp System
350 N. St. Paul St.
Dallas, Texas 75201 and/or

Carole G. Miller, Esq.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602

4.       Thomas James McBride is a resident of Texas and a broker employed by Merrill
Lynch in Dallas Texas.  He may be served at his business address:

Merrill Lynch
5910 N. Central Expressway, Suite 200,
Dallas, Texas 75026

5.      Kaddouri is a former Client Associate and Broker for Merrill Lynch, and this action accrued in whole or in part at Merrill Lynch's place of business in Dallas County, Texas.

6.      The matter in controversy exceeds, exclusive of interest and costs, the minimum jurisdictional limits of this Court.

7.      This is a proceeding for legal and equitable relief to secure the rights of Kaddouri under the laws of Texas.

8.      This proceeding is one for general and punitive damages, arising out of tort, specifically the torts of fraud, the intentional infliction of emotional distress, negligent retention, negligent training and negligent supervision.

9.    A.    At all times material herein, Thomas James McBride [McBride] was employed by Merrill Lynch as a Broker;
       B.    At all times material herein, McBride was a supervisor for Merrill Lynch;
       C.    At all times material herein, McBride was a manager for Merrill Lynch;
       D.    At all times material herein, McBride was an agent of Merrill Lynch;
       E.    At all times material herein, McBride was a vice-principal of Merrill Lynch.

10.   A.    At all times material herein, Mark Rhodes [Rhodes] was employed by Merrill Lynch as a Resident Vice President;
       B.    At all times material herein, Rhodes was a supervisor for Merrill Lynch;
       C.    At all times material herein, Rhodes was a manager for Merrill Lynch;
       D.    At all times material herein, Rhodes was an agent of Merrill Lynch;
       E.    At all times material herein, Rhodes was a vice-principal of Merrill Lynch.

11.   A.    At all times material herein, Dave Wiener [Wiener] was employed by Merrill Lynch as a Resident Manager;
       B.    At all times material herein, Wiener was a supervisor for Merrill Lynch;
       C.    At all times material herein, Wiener was a manager for Merrill Lynch;
       D.    At all times material herein, Wiener was an agent of Merrill Lynch;
       E.    At all times material herein, Wiener was a vice-principal of Merrill Lynch.

12.   A.    At all times material herein, Alan Hamrick [Hamrick] was employed by Merrill Lynch as a Sales Manger;
       B.    At all times material herein, Hamrick was a supervisor for Merrill Lynch;
       C.    At all times material herein, Hamrick was a manager for Merrill Lynch;
       D.    At all times material herein, Hamrick was an agent of Merrill Lynch;
       E.    At all times material herein, Hamrick was a vice-principal of Merrill Lynch.

13. A.   At all times material herein, Dodee Crockett [Crockett] was employed by Merrill Lynch as a Broker;
    B.   At all times material herein, Crockett was a supervisor for Merrill Lynch;
    C.   At all times material herein, Crockett was a manager for Merrill Lynch;
    D.   At all times material herein, Crockett was an agent of Merrill Lynch;
    E.   At all times material herein, Crockett was a vice-principal of Merrill Lynch.

14. A.   At all times material herein, Ron Coleson [Coleson] was employed by Merrill Lynch as a Manager and/or Broker;
    B.   At all times material herein, Coleson was a supervisor for Merrill Lynch;
    C.   At all times material herein, Coleson was a manager for Merrill Lynch;
    D.   At all times material herein, Coleson was an agent of Merrill Lynch;
    E.   At all times material herein, Coleson was a vice-principal of Merrill Lynch.

15. A.   At all times material herein, Susan Ruebman was employed by Merrill Lynch as a Senior Client Associate.
    B.   At all times material herein, Ruebman was an agent of Merrill Lynch;

16.   At all times material herein, the individuals listed *supra* in paragraphs 9-15, and Merrill Lynch's other employees, acted in their capacity as agents, managers and/or vice-principals of Merrill Lynch.

17.   At all times material herein, the individuals listed *supra* in paragraphs 9-15, and Merrill Lynch's other employees, acted in the course and scope of their employment with Merrill Lynch.

18.   Alternatively, at all times material herein, Defendant McBride acted outside the course and scope of his employment with Merrill Lynch.

19.   At all times material herein Merrill Lynch either committed the conduct or authorized, encouraged, condoned and/or ratified the conduct complained of below and it, accordingly, is responsible for all below described conduct.

20.   At all dates material herein, Merrill Lynch owned and operated the branch office located at 5910 N. Central Expressway, Suite 200, Dallas, Texas 75206, where Kaddouri was employed.

21.   Plaintiff has attempted to resolve this matter through the internal mediation procedure established by Defendant Merrill Lynch. Plaintiff's statute of limitations have been tolled because of utilization of that procedure from her invocation of the procedure on

December 5, 2003 until the failure of mediation on May 3, 2004.

22.    Beginning in January 2000, Kaddouri began working for Merrill Lynch as a Broker in the Professional Development Program, a training program for new Brokers. She continued to work as a Broker for Merrill Lynch until she accepted a demotion to a position as a Client Associate.

23.    Beginning in the fall of 2001, Crockett and McBride began aggressively recruiting Kaddouri to take a demotion and move to the Crockett McBride broker group as a Client Associate.

24.    In order to entice Kaddouri to give up a Broker position, and take a Client Associate position, Merrill Lynch agents including Crockett and Defendant McBride engaged in a course of fraudulent conduct including make material misrepresentations to Kaddouri and omitting material facts to Kaddouri, to get her to accept the position in their work group.

25.    Despina Kaddouri relied upon those representations and accepted the position and began working in the Crockett McBride brokerage group in December 2001.    2 6 .

At the time Kaddouri was induced to join the Crockett McBride group, Merrill Lynch and Defendant McBride knew or had reason to know that it did not have adequate policies in effect at the above location to ensure that all of its employees behaved in a competent, professional and respectful manner to its other employees, and/or to investigate complaints of employees regarding abusive and tortious conduct in the workplace.

27.    Merrill Lynch knew or had reason to know that their supervisory employees, including those listed *supra* in paragraphs 9-15, including Defendant McBride, were failing to supervise, discipline and/or train employees properly and appropriately regarding their interaction with their co-workers, thereby creating an unreasonable risk of harm to employees, including Kaddouri.

28.    Upon information and belief, Merrill Lynch and Defendant McBride knew or should have known that employee Susan Ruebman's conduct in the workplace was

December 5, 2003 until the failure of mediation on May 3, 2004.

22.    Beginning in January 2000, Kaddouri began working for Merrill Lynch as a Broker in the Professional Development Program, a training program for new Brokers. She continued to work as a Broker for Merrill Lynch until she accepted a demotion to a position as a Client Associate.

23.    Beginning in the fall of 2001, Crockett and McBride began aggressively recruiting Kaddouri to take a demotion and move to the Crockett McBride broker group as a Client Associate.

24.    In order to entice Kaddouri to give up a Broker position, and take a Client Associate position, Merrill Lynch agents including Crockett and Defendant McBride engaged in a course of fraudulent conduct including make material misrepresentations to Kaddouri and omitting material facts to Kaddouri, to get her to accept the position in their work group.

25.    Despina Kaddouri relied upon those representations and accepted the position and began working in the Crockett McBride brokerage group in December 2001.

26.    At the time Kaddouri was induced to join the Crockett McBride group, Merrill Lynch  and Defendant McBride knew or had reason to know that it did not have adequate policies in effect at the above location to ensure that all of its employees behaved in a competent, professional and respectful manner to its other employees, and/or to investigate complaints of employees regarding abusive and tortious conduct in the workplace.

27.    Merrill Lynch knew or had reason to know that their supervisory employees, including those listed *supra* in paragraphs 9-15, including Defendant McBride, were failing to supervise, discipline and/or train employees properly and appropriately regarding their interaction with their co-workers, thereby creating an unreasonable risk of harm to employees, including Kaddouri.

28.    Upon information and belief, Merrill Lynch and Defendant McBride knew or should have known that employee Susan Ruebman's conduct in the workplace was

inappropriate, outrageous and causing other employees, including Kaddouri, to fear for their physical safety and personal integrity and to harm their continued employment prospects and careers, but Merrill Lynch failed to monitor or discipline Ruebman effectively and continued to retain Ruebman to the detriment of its other employees including Kaddouri.

29.    Merrill Lynch and Defendant McBride failed to notify and/or warn employees in regard to abusive and volatile conduct of Ruebman in the workplace despite the fact that Ruebman had a history of abusive conduct in the workplace including hysterical crying jags, lying, attempts to destroy the careers of her co-workers, untruthful behavior, intolerable absenteeism, inappropriate emotional outbursts, frequent yelling at co-workers or giving them the "silent treatment", inappropriate threats, interference with employees while at home and malicious interference with the careers of her co workers and threats to get her co-worker Kaddouri fired. Defendant knew or should have known of the grossly inappropriate behavior of employee Ruebman because it had been ongoing for many months or even years.

30.    Merrill Lynch knew or should have known that the conduct and potential conduct of Defendant Ruebman posed a threat to the safety, well-being and/or health of its employees, including Kaddouri, as well as an unreasonable threat to the continued employment of employees including Kaddouri and that it was reasonably foreseeable that such conduct would cause an unreasonable risk of harm.

31.    Merrill Lynch failed to warn Kaddouri of the forseeable danger presented by the above described conduct and otherwise took inadequate and grossly inadequate measures to warn employees of the danger posed by such conduct.

32.    Merrill Lynch and its managers and supervisors including Manager Dodee Crockett and Defendant McBride generally undertook negligent and grossly negligent acts or omissions in ensuring the safety, well-being and/or health of its employees and/or their careers , including Kaddouri, such acts or omissions include but are not limited to:

A.    inadequate supervision of Merrill Lynch's employees including employee Ruebman;

B.    inadequate training and supervision of managers, supervisors and/or employees of Merrill Lynch to ensure a safe workplace, thereby causing an unreasonable risk of harm to such employees;

C.    Condonation of outrageous employee behavior including hysterical crying jags, lying, attempts to destroy the careers of her co-workers, untruthful behavior, intolerable absenteeism, inappropriate emotional outbursts, frequent yelling at co-workers or giving them the "silent treatment", inappropriate threats, insubordination, interference with employees while at home and malicious interference with the careers of her co workers and threats to get her co-worker Kaddouri fired;

D.    inadequate handling of complaints including Kaddouri's complaints regarding abusive and tortious conduct; including failure to discipline and/or restrain such conduct and continued retention of employee/s committing such conduct;

E.    failure to warn employees of employee Ruebman's forseeable abusive and tortious conduct.

33.    Kaddouri suffered physical and emotional injuries as a result of the abusive and tortious conduct of Defendants Merrill Lynch and McBride and was forced to leave her position because of the conduct of Defendant Merrill Lynch and its employees and Defendant McBride.

34.    Kaddouri and her co-workers repeatedly complained about the inappropriate conduct of employee Ruebman and repeatedly over the span of several months requested that Merrill Lynch and Defendant McBride take curative action. No such action was taken.

35.    On or about August 9, 2002, Sales Manager Hamrick called Kaddouri into his office and in a very loud, confrontational manner accused Kaddouri of causing "trouble" in regard to employee Ruebman. Kaddouri advised Hamrick that she had been reporting Ruebman's abusive and tortious conduct to McBride and Crockett, and requested the Hamrick advise her of any further steps she should take in regard to Ruebman. Hamrick, however, failed to provide her any assistance, indicating that she needed to "make it work."

36.    Later that same day, Kaddouri met with McBride and advised him of her meeting with Hamrick, and indicated to him she could not understand why employee Ruebman was being allowed to continue with the abusive conduct. Kaddouri indicated to McBride that she could no longer tolerate the abusive conduct and that she had no choice but to resign.

37.    At that time Kaddouri advised McBride of her resignation due to intolerable working conditions, Merrill Lynch had not conducted an adequate investigation concerning

Ruebman's abusive and tortious conduct and had retained Defendant Ruebman as an employee, despite the fact it knew or should have known of her abusive and tortious conduct.

38.    Kaddouri sustained physical and emotional injuries as a result of the abusive and tortious conduct that were not sustained in the course of her employment and was further deprived of her career by the actions and inactions of Defendant Merrill Lynch and Defendant McBride.

39.    Kaddouri suffered physical and emotional injuries as a result of continuous repetitive mentally traumatic activity in the terms, conditions and privileges of her employment that are not traceable to a definite time, place and cause.

40.    As a result of the negligence and gross negligence of Merrill Lynch's failing to supervise its employees properly, Kaddouri was subjected to mental anguish, humiliation, loss of reputation, loss of privacy and emotional distress.

**NEGLIGENT RETENTION CLAIM AGAINST DEFENDANT MERRILL**

41.    Kaddouri incorporates by reference the allegations contained within the paragraphs *supra* as if set forth herein verbatim.

42.    Merrill Lynch hired the individuals listed in paragraphs 9-15, *supra*, as vice-principals, agents and/or supervisors of its employees, to operate its place of business and to supervise its workforce, including Kaddouri.

43.    <u>Duty:</u>    Merrill Lynch, as the owner, operator and/or manager of the above location, owed a duty to exercise the ordinary care that a reasonable and prudent owner and/or manager would have exercised under the same or similar circumstances, including the duty to:

A.    avoid negligent conduct and provide a safe workplace for employees that did not create an unreasonable risk of harm;

B.    respond to complaints of employees concerning abusive and tortious conduct of incompetent employees in the workplace, including by investigating such complaints and not retaining such employees;

C.    warn employees of forseeable abusive and tortious acts of other employees in the workplace.

44.    <u>Breach:</u> Merrill Lynch, as the owner and manager of the above location, failed

to exercise the ordinary care that a reasonable and prudent owner and manager would have exercised under the same or similar circumstances, including in:

A.   failing to provide a safe and secure premise for use by Kaddouri, thereby creating an unreasonable risk of harm;

B.   failing to assist Kaddouri properly and adequately as an employee, and take action in regard to her complaints of abusive and tortious conduct, including by failing to investigate her complaints and retaining Defendant Ruebman, and instead constructively terminating Kaddouri's employment;

C.   failing to warn of and/or negligently and/or intentionally concealing from employees, including Kaddouri, abusive and tortious activity and/or misconduct at the premises by employees, including Defendant Ruebman, about which Merrill Lynch knew or should have known.

45.   <u>Causation</u>: The above acts and/or omissions were foreseeable and were singularly and/or cumulatively a proximate cause of the occurrence in question and the resulting injuries and damages sustained by Kaddouri.

46.   <u>Gross Negligence</u>: Merrill Lynch, by and through their acts and/or omissions including, but not limited to those set forth herein, have engaged in conduct which is willful, wanton, heedless and reckless, and in conscious indifference to the rights, safety and welfare of Kaddouri.

## NEGLIGENT TRAINING , SUPERVISION CLAIM AGAINST DEFENDANT MERRILL

47.   Kaddouri incorporates by reference the allegations contained within the paragraphs *supra* as if set forth herein verbatim.

48.   Merrill Lynch hired the individuals listed in paragraphs 9-15, *supra*, as vice-principals, agents and/or supervisors of its employees, to operate its place of business and to supervise its workforce, including Kaddouri.

49.   <u>Duty</u>: Merrill Lynch, as the owner and manager of the above location, owed a duty to exercise the ordinary care that a reasonable and prudent owner and manager would have exercised under the same or similar circumstances, including the duty to:

A.   have adequate polices to protect employees in the workplace from an unreasonable risk of harm;

B,   exercise reasonable care in the supervision and training of its employees to provide a reasonably safe and healthful workplace that does not

present an unreasonable risk of harm to the employees;

C.    warn employees of reasonably forseeable abusive and tortious acts of other employees

50.    <u>Breach</u>:   Merrill Lynch, as the owner and manager of the above location, breached its duty of reasonable care by negligently failing to:

A.    have adequate policies to protect employees from unreasonable risk harm in the workplace;

B.    exercise reasonable care in the supervision and training of its employees with respect to their obligation to provide a reasonably safe and healthful workplace that does not present an unreasonable risk of harm to employees.

C.    warn employees of reasonably forseeable abusive and tortious acts by other employees.

51.    <u>Causation</u>: The above acts and/or omissions were forseeable and were singularly and/or cumulatively a proximate cause of the occurrence in question and the resulting injuries and damages sustained by Kaddouri.

52.    <u>Gross Negligence</u>: Merrill Lynch, by and through their acts and/or omissions including, but not limited to those set forth herein, have engaged in conduct which is willful, wanton, heedless and reckless, and in conscious indifference to the rights, safety and welfare of Kaddouri.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST DEFENDANT MERRILL LYNCH AND DEFENDANT MCBRIDE

53.    Kaddouri incorporates by reference the allegations contained within the paragraphs *supra* as if set forth herein verbatim.

54.    Kaddouri alleges further that Defendant Merrill and Defendant McBride, by the totality of the circumstances including the conduct and actions described, collectively and separately, in the paragraphs *supra* acted intentionally or recklessly, inflicting mental anguish and/or emotional distress upon her as a result of the above-described conduct. Such conduct by Merrill Lynch and Ruebman was extreme and outrageous and justifies the imposition of actual and punitive damages. Such actions by Merrill Lynch and McBride caused Kaddouri damages for severe emotional distress for which she sues.

## FRAUD CLAIM AGAINST DEFENDANT MERRILL LYNCH AND DEFENDANT MCBRIDE

55.     Kaddouri incorporates by reference the allegations contained within the paragraphs *supra* as if set forth herein verbatim.

56.     The following representations were made to Kaddouri in a continuing course of conduct by Merrill Lynch representatives including Defendant McBride in November and December 2001, concerning Kaddouri moving from her Broker position to a lower Client Associate position in the Crockett McBride group:

> A.     she would be trained by Defendant Ruebman;
>
> B.     the position of Client Associate would last for a two year period, and that at that time she could continue in the position or possibly become a Junior Broker on the team;
>
> C.     because of the tremendous success of the Crockett McBride team and the amount of learning and training available this would be a good career move;
>
> D.     after serving time as a Client Associate, she would become a Junior Broker and that she would automatically get referrals from clients with significant portfolios, which would be a steady source of income to her as a broker;
>
> E.     she would gain invaluable experience, including influential contacts, networking opportunities, and sales opportunities, which she could utilize when she returned to a Broker position, whether or not the Broker position was with their group; and
>
> F.     the contacts and opportunities would be financially lucrative when she returned to a Broker position whether or not the Broker position was with their group.

57.     In addition, Defendant Merrill Lynch and its Managers including Crockett and

McBride significant omitted information relating to the actual working conditions on the team due to the disruptive conduct of employee Ruebman including but not limited to a history of abusive conduct in the workplace including hysterical crying jags, lying, attempts to destroy the careers of her co-workers, untruthful behavior, intolerable absenteeism, inappropriate emotional outbursts, frequent yelling at co-workers or giving them the "silent treatment", inappropriate threats, interference with employees while at home and malicious interference with the careers of her co workers.

58.    By the statements and omissions Defendant Merrill Lynch and defendant McBride created a false description of work on their team in order to get her to work on the team.

59.    The statements were false.

60.    Further, the statements and omissions and lack of curative conduct by Defendant Merrill Lynch and Defendant McBride caused the constructive discharge of the Plaintiff on or about August 9, 2002 and ruined her career in the brokerage industry and caused her significant emotional distress.

61.    Upon information and belief, at the time Crockett and McBride made these material representations to Kaddouri, they knew these statements were false and were creating a false impression of work on their team and/or they made the statements and omitted the true facts as to the work life or team members recklessly as a positive assertion without knowledge of the truth of the statements.

62.    In making the statements set forth in the preceding paragraphs, Defendant Merrill Lynch and its Managers including Defendant McBride intended Kaddouri act upon the representations.

63.    Kaddouri alleges that the representation and omissions of material facts described above caused Kaddouri to leaver her higher position as a Broker for a demotion to a Client Associate position, and further caused her to remain at Merrill Lynch which she did

to her ultimate detriment and as a result she suffered injury.

64.    Kaddouri further alleges that Crockett and McBride knew the representations described in the preceding paragraph along with the material omissions created a false picture of employment on the team and their conduct was wilful and malicious and constitute conduct for which the law allows the imposition of exemplary damages.

PUNITIVE DAMAGES:

65.    For the gross negligence, and/or intentional acts alleged against Merrill Lynch and Defendant Ruebman, Kaddouri additionally seeks punitive damages against Merrill Lynch and Defendant McBride, in amounts sufficient to punish them and to deter others similarly situated from engaging in the above alleged conduct.

66.    To the extent such acts and/or omissions constitute intentional torts, they are of a character sufficient to remove this cause from the punitive damage cap provided by TEX. CIV. PRAC. AND REM. CODE §41.007. Kaddouri seeks punitive damages from such gross negligence, and/or intentional torts in an amount to be determined by the jury.

67.    To the extent such acts and/or omissions are controlled by the punitive damage cap provided by TEX. CIV. PRAC. AND REM. CODE §41.007, Kaddouri seeks punitive damages from Merrill Lynch's and Defendant McBride's negligence and other torts in an amount to be determined by the jury and/or statute.

68.    WHEREFORE, Kaddouri respectfully prays this Court grant her the following relief from Merrill Lynch :

A.    economic damages and economic expectation damages for her claims of: negligent retention, negligent supervision and training, intentional infliction of emotional distress, and/or including backpay, front pay, reinstatement, retroactive seniority, pension benefits, promotions or other positions she otherwise would have been entitled, all other employee benefits including health, disability and life insurance benefits to which she otherwise would have been entitled, and any other relief necessary to compensate her for the tort violations;

B.    compensatory damages for physical pain, mental anguish, humiliation, loss of privacy, loss of reputation and emotional distress relating to her claims of:    negligent retention, negligent supervision and training,

intentional infliction of emotional distress and/or fraud in the maximum amount allowed by law;

C.    Punitive damages relating to her claims of: negligent supervision and training, intentional infliction of emotional distress, and/or fraud in the maximum amount allowed by law;

D.    Costs for the prosecution of her tort claims, including the costs of expert witness fees;

E.    Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

F.    Such other general relief to which Plaintiff shows herself justly entitled.

69.    WHEREFORE, Kaddouri respectfully prays this Court grant her the following relief from Defendant McBride:

A.    economic damages and economic expectation damages for her intentional infliction of emotional distress and fraud claims, including backpay, front pay, reinstatement, retroactive seniority, pension benefits, promotions or other positions she otherwise would have been entitled, all other employee benefits including health, disability and life insurance benefits to which she otherwise would have been entitled, and any other relief necessary to compensate her for the tort violations;

B.    compensatory damages for physical pain, mental anguish, humiliation, loss of privacy, loss of reputation and emotional distress relating to her intentional infliction of emotional distress and fraud claims, in the maximum amount allowed by law;

C.    Punitive damages relating to her claims of intentional infliction of emotional distress and fraud claims in the maximum amount allowed by law;

D.    Costs for the prosecution of her tort claims, including the costs of expert witness fees;

E.    Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

F.    Such other general relief to which Plaintiff shows herself justly entitled.

70.    JURY DEMAND: Kaddouri demands a jury on all issues so triable.

Respectfully Submitted,

Janette Johnson, Esq.
Texas Bar No. 10744020

Christine Neill Huffman, Esq.
Texas Bar No. 00796793
Amanda L. Reichek, Esq.
Texas Bar No. 00796793
Attorneys for Plaintiff

Janette Johnson & Associates
2601 Welborn
Dallas, Texas 75219
(214) 522-4090
(214) 522-4092 facsimiles

NO. 04-04909

| | | |
|---|---|---|
| DESPINA KADDOURI, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MERRILL LYNCH, PIERCE, FENNER | § | DALLAS COUNTY, TEXAS |
| & SMITH | § | |
| | § | |
| and | § | |
| | § | |
| THOMAS JAMES MCBRIDE, | § | |
| | § | |
| Defendants. | § | 95th JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated and Thomas James McBride (collectively "Defendants"), and file this their Original Answer to Plaintiff's Original Petition and Jury Demand, as follows:

### I.

Defendants deny each and every, all and singular, in whole or in part, the allegations contained in Plaintiff's Original Petition and Jury Demand, and demand strict proof thereof.

### DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or are otherwise untimely.

**DEFENDANTS' ORIGINAL ANSWER – PAGE 1**
DALLAS3 958225v1 49351-00108